## LADD & TILTON BANK v. UNITED STATES.

### No. 6193.

Circuit Court of Appeals, Ninth Circuit.

Oct. 13, 1930.

Prescott W. Cookingham and Leo J. Hanley, both of Portland, Or., for appellant.

George Neuner, U. S. Atty., and J. W. McCulloch, Asst. U. S. Atty., both of Portland, Or.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

This suit originally was brought by the United States against Ladd & Tilton Bank, now Nassau Company, a corporation, based on an implied warranty of genuineness of the signatures of the payees on certain registered Victory notes. The present is the second appeal in the cause, and a full statement of the facts will be found in the former opinion of this court. 30 F.(2d) 334. It was there held that the liability of the appellant bank was upon an implied warranty of the genuineness of the notes bearing the forged indorsements, but the judgment was reversed and the cause remanded for further proceedings, upon the ground that the trial court erred in striking from appellant's second amended answer allegations to the effect that on or about September 16, 1920, the government was notified that the signatures of the payees on the Victory notes involved had been forged, but failed and neglected to notify the bank of such forgeries, or that any liability was claimed against it, until about April 17, 1922; that the bank was without fault and had no knowledge of such forger-ies; that, at the time of the suspension of the Bank of Jacksonville, and at the time of the discovery of the forgeries by the government, the appellant held a large amount of securities from the Bank of Jacksonville, as general security for any and all indebtedness then or thereafter due or to become due appellant; that it also held a general guaranty covering the Bank of Jacksonville obligations, signed by responsible guarantors; that the Bank of Jacksonville was possessed of sufficient assets to have paid the sum of $10,000 and more on any preferred claim that might have been presented; that prior to April 17, 1922, the Bank of Jacksonville was completely liquidated, its assets sold, and the proceeds distributed to its creditors. The court was of the opinion that these allegations, if true, would constitute a defense to the action, at least in part.

On the retrial of the case in the District Court, two questions, and only two, were open for determination: (1) Did the government exercise reasonable diligence in giving notice to appellant of the forgeries; and (2) if the government was delinquent in this regard, did its lack of diligence work injury to appellant? These issues were tried to the court without the intervention of a jury, and the following pertinent finding was made:

"That the first information the government received or had of the forgery was about October, 1920, when an agent or representative of the plaintiff immediately called upon the defendant bank, advised its officers that the endorsements in question were probably forgeries, and gave them all the information the government then had in reference thereto. The matter was also the subject of comments in the local newspapers about the same time, and such comments came to the knowledge of the bank's officers. In addition, an agent of the government frequently thereafter had conferences with the officers of the bank about the matter, and it was the subject of frequent consideration by the bank officers. On April, 1921, the cashier of the Jacksonville Bank, who was then confined in the penitentiary under a state charge, confessed or admitted to an agent of the government that he had forged the names of Fick and Cantrall to the endorsements on the notes in suit, and the officers of the defendant bank were immediately advised of such confession."

The evidence amply sustains this finding. No exception was taken to it in the court

below, nor is it challenged here. The trial judge, in his memorandum opinion,[1] states:

"The allegations of the defendant that the plaintiff was negligent in informing it of the forgery are not sustained by the testimony. On the other hand, the evidence is clear and substantially uncontradicted that the government advised it of the forgery immediately upon receiving notice thereof, and long before it had surrendered any collateral held by it. It is argued, however, on behalf of the defendant that plaintiff had no cause of action against it until the issue to Fick and Cantrall of new notes in lieu of those forged, and that because it was not advised of such issue until it had surrendered its collateral the Government cannot recover in this suit, or at least it is entitled to credit for the value of the collateral surrendered by it.

"The Circuit Court of Appeals held in this case that the cause of action against the defendant in favor of the plaintiff arose immediately upon the making of the exchange in May, 1920.

"A claim is made that the government should have proceeded against the Bank of Jacksonville to recover the value of the forged instruments, and not having done so it cannot recover from the defendant, but the government had no dealings with that bank. It made no representations, express or implied, to the government concerning the validity of the endorsements on the notes in suit, nor did the government issue or deliver to it the notes in exchange for the forged instruments, but to the defendant, relying on its implied warranty as to the genuineness of the endorsements on the notes for which the exchange was made."

Little, if anything, can be added to this terse statement of the situation, other than to say that there was no obstacle whatsoever in the path of the appellant, preventing it from taking any steps for its own protection which it was advised to take, after it had been promptly notified by the government of all the facts concerning the forgery which the government possessed. It is patent from the record, considered in its totality, that the defendant was not lulled into any feeling of false security by any failure or shortcoming on the part of the government, but its inaction was due solely to its insistence throughout that no duty or liability rested upon it or attached to it in the circumstances.

Affirmed.

WILBUR, Circuit Judge, concurs.

---

[1] Here quoted in full.